14-1145 WildEarth Guardians et al. Petitioners v. Environmental Protection Agency Mr. Quartz for the petitioners, Mr. Link for the respondent Good morning, Your Honor. May it please the Court, Paul Quartz for petitioners. Petitioners here represent residents of some of the most polluted locations in the country who continue to fight for EPA to apply the strict requirements of the Clean Air Act to finally address the problem of fine particle pollution, or PM 2.5, which is one of the deadliest forms of pollution covered by the Act. My plan this morning is to first review why EPA had no authority to reset the statutory deadlines in this classification rule, and second, to review how this rule continues to have legal consequences and why a remedy from this Court is still important. Can I adjust your plan just a little bit? Of course. And start with the question of jurisdiction, which I think you were suggesting would be the back end. If we could just start there. I think there are potentially different jurisdictional arguments with respect to 97 versus 2006, or at least let's focus on them in order. With 97, we have three potential jurisdictions that are an issue, as I understand it. As to two of them, Libby and, is it South Coast, I think, they have clean data determinations, or are about to? Sort of. Libby has had a final clean data determination. South Coast had one proposed last year, but EPA has not finalized that. We have active litigation around that reclassification request, and in a recent submittal to the Court in that litigation, EPA has said that they are in the process of analyzing new air quality information. When you say reclassification, is that, I don't know all the terminology, but a clean data determination would be considered a reclassification? No. There is an enforcement action going on, again, in the Northern District of California, saying South Coast and San Joaquin have, for the 97 standards, did not meet the moderate area attainment deadline, and so need to be reclassified to Syria with new planning requirements. EPA's response for South Coast has been to propose, well, they're clean now, so we don't need to reclassify them. But they've only proposed that a new air quality data, as I said, is calling that into question, and so that is far from a settled issue around South Coast. Okay, then just, let's focus on Libby, and then we can just talk for a second about whether South Coast is meaningfully different. Right. But with respect to a jurisdiction for which there's already been a clean data determination, then why is the dispute live as to them? Why wouldn't it be moved? I'm a little concerned that we're looking at it the wrong way. The claim here is that the classification rule violates the Clean Air Act. Yeah. And it's not specific to Libby or South Coast or San Joaquin. The whole classification rule changes statutory deadlines, and so if there's any legal consequence of that rulemaking, then the court has jurisdiction. No, no, I'm not sure that's right. Do you think, in other words, suppose that there's nothing that can be done with respect to those three jurisdictions, the three that are found to be a non-attainment vis-a-vis 97. Okay. Suppose we take them seriatim and we conclude that there's no effectual relief that could be granted with respect to any of them because they might be different reasons, but let's just suppose that's true. Well, then I... If that's true, then I don't think you would dispute that we would be lacking in jurisdiction. No, I think I still would dispute it because, again, this doesn't make a distinction between areas under the 97 standards and areas under the 2006 standards. As to 97, no, I take your point as to 2000. We'd also have to go through the same exercise as in 2006. But the rulemaking just resets all those deadlines in a single rulemaking. So there's not... You couldn't say, well, we'll vacate the rule for purposes of the 2006 standard, but we won't vacate it for purposes of the 97. So it's not set up that way. I understand that. My point is that there are a certain number of jurisdictions that are in non-attainment with respect to both. Right. With respect to 97 and 2006. Right. If we go through each one of those jurisdictions, okay, I'm just taking them seriatim, and we find that with respect to each one, no effectual relief can be granted, it's moot or it's... Right. Or it's not ripe or what... If we take off every single one of them, then we don't have jurisdiction. Fair enough. But if you flip it around and you find there are consequences in even one of those jurisdictions, then we should be done. Sure. And I don't know a better way to do it than to take them one by one. Why don't we start with South Coast or San Joaquin? Because there's just no dispute there. No, I'd like to start with them. Okay. All right. So Libby has had a final determination, and there's some question about what will happen in the future. It is, again, theoretically possible that should that area fall out of attainment, they have not been re-designated, we will be back in this question of when various things were due, and this classification rule has implications for figuring out that timing. Yeah. So I obviously want to start with the ones that are hardest for you and easiest for us for obvious reasons. Fine. Then if we deal with Libby, then we're with South Coast and San Joaquin Valley with respect to 97. Now, with South Coast, I take it the question is, is it likely enough that the proposed rule that gives them a clean data determination will be finalized? Right. If it is finalized, then they're in the same vote as Libby, but the point that you have is that we don't know that yet. Right. And I would say there, and maybe the government can speak to this, but my understanding is there is air quality data that shows they are not in fact attaining, and so that is calling everything into question, and I think it's unlikely that they will finalize that determination. With respect to 97?  Okay. Then let's talk about the remaining one, which is San Joaquin. San Joaquin. Okay. Right. Now, with respect to San Joaquin, the situation is different because there's no clean data determination. In fact, we're in a different vote altogether because they sought voluntary reclassification to Sirius. Right. If I'm remembering this correctly. So, and then they sought an extension. Yes. Now, in connection with the extension request, as I understand it, correct me if this is wrong, as I understand it, there's a submission of a plan in connection with the extension request. Right. Right. So, we're in a situation now where a plan has already been submitted. Yes. So, what's the effect? If you were to prevail, what would be the forward-looking effect vis-a-vis San Joaquin Valley if they've already submitted a plan? Right. Well, this plan is not approvable. I mean, and we explained... Not approvable or not... Not approvable by EPA. And we explained that plan was prepared before this Ninth Circuit decision came down that called into question this particular strategy that they use. So, that plan... Then let's assume that it's denied. Okay. Okay. Then what happens then? Because as I understand it, and this may be wrong, but as I understand it, if it's denied, then what happens is that they only have 12 months to submit a more serious effort at a plan because they will have been found to... They will have been denied. And whereas what we're talking about is... That seems like it puts you in a better situation. No, because I don't think it's as clear as that. I think... And this is... So, well, first off, it may be denied or may be withdrawn. And so if it's withdrawn, then it has different repercussions. What would lead us to think that it might be withdrawn? That would be... I take it that's the jurisdiction's prerogative to withdraw? Yes. If EPA says we're not going to be able to approve this plan, often what the districts will do is rather than get a disapproval, they'll withdraw the plan. I see. And this happened various times in the San Joaquin Valley. But the San Joaquin example is... A fairly clear example of how this reclassification rule continues to have legal consequences. Because in that reclassification request, San Joaquin asked for a voluntary reclassification. And they're only allowed to ask for a voluntary reclassification within 18 months of the moderate area plan deadline. Right. And EPA said, we can give you that voluntary reclassification because we've reset that deadline. Right. With their voluntary reclassification, they now have four years to submit that plan. Whereas under the statute, there's no way they would be entitled to that much time now. But the alternative universe would be that they would get something less than four years, which I think is 18 months. Because they would be... Because what would happen is... That's right. Your best solution is EPA is required, as of the date of our decision, to reclassify... Well, I guess they automatically get reclassified. No, no. It's a finding. It's a... Okay. Yes. They make a finding and then... They make a finding. They reclassify. They set an 18-month deadline to submit a new plan. So what we're talking about is the difference between 18 months and four years. That's right. Now, if EPA... As I understand it, if EPA then denies here... Take out the field withdrawal because I wasn't focused on that. Well... And I understand that. Okay. All right. But let's just say we're in the universe of denial. Right. If it's denial, then it imposes a 12-month time frame. 18 months. Okay. It's still 18. Yes. In other words, you're still as well off because the best case scenario is 18 months. Well, but when does that denial have to happen? I mean, EPA is saying there's no obligation for them to have a serious area plan submitted and approved until 2019. They can sit on it for years and there's no... You know, it would... There's nothing that necessarily... I mean, there are various lawsuits that we can bring if you sit on a plan for too long. But there's no guarantee that we will get a plan any sooner by their voluntary actions. And again, there's case law that says sort of voluntary actions are not sufficient to moot litigation like this. The point is there are clear legal consequences and those legal consequences are to the detriment of petitioners who are seeking to have the strict deadlines of the Clean Air Act imposed. Their argument on mootness was that these December 31st, 2014 deadlines have passed and so there are no continuing legal consequences. But we've identified that there are specific legal consequences that are tied to that due date. Yeah, and I think I'm with you on that because it seems to me the main potential legal consequence is the difference between 18 months and four years, right? For the deadline to submit a plan, right? And then the question would be, is that difference, the delta between 18 months and four years in fact an issue? Because even in the best case scenario for you, you still have 18 months. That's right. I mean, yes. I mean, that's as much as we... I mean, we'd love to see EPA move faster. They can move faster. You know, if they're so inclined to move fast here then they can move fast under an 18 month clock as well. But as long as that four year deadline is in place, there are a number of ways that EPA can sort of play the game and stretch out this planning process. And that is the legal consequence that we are trying to, you know, obviously eliminate. So, and by stretch out, you mean... So they can withdraw. So example, they can tell the district, look, if we disapprove your plan, you're going to have 18 months. If you withdraw that plan, your deadline isn't for another four years. And so you can, you know, draw this out. And so again, you pull on one thread of this subpart four statute and the whole thing begins to unravel. And the basic point that, you know, I know we didn't start with is that EPA has no authority to rewrite these requirements of subpart four. Well, before we get to that, then let's, and we will give you an opportunity to get to that. Can we talk about 2006? Absolutely. So I think we've dealt with the three jurisdictions with respect to 1997. Right. Now, with respect to 2006, what's your argument as to why there's continuing possibility of harm with respect to 2006? Right. Again, it's not even a possibility. It's not even speculative now. So South Coast submitted a request for judicial notice with an October 20th, 2015 rulemaking. This is another voluntary reclassification of the South Coast now under the 2006 standard. And again, EPA is invoking this voluntary reclassification, giving the area four years, though for some reason they picked 2018 out of the air, but more time than would be allowed under the statute at this stage. And the best case scenario for you would be, again, we're talking about 18 months. That's right. So what would happen is, if you were to win across the board and you win under your statutory interpretation argument, and then you get a favorable ruling, and then the remedy would be the EPA then at that point is required to trigger the reclassification to serious. That's right. In which event, because it wasn't a voluntary reclassification, but it was involuntary, they would have 18 months within which to submit a serious plan as opposed to four years. Correct. Correct. And the best case for you on that one is South Coast because of voluntary reclassification is a pending matter. Exactly. It's pending. And it sounds like there's also talk about similar action in Utah. And that's not in the record anywhere. But in addition... And is San Joaquin in the same boat too? There's a potential voluntary reclassification there. Yes, though I don't think that's been submitted yet. Yeah, so they're on track to miss the deadline and there are other repercussions from that. But the other benefit that we get, of course, in getting the statute put back in place is that for all of those areas that have theoretically submitted a modern area plan have now sort of caught up, those plans have not been approved. And so again, there's this possibility and we can speculate on all these things. But if those are withdrawn or if they're not approved or if they're sat on for a long time, there are ways again for EPA to delay the process beyond what would be allowed if the statute had applied. If the statute applied, EPA would be making findings that these various areas had failed to submit and that would start various clocks. Now, those clocks can be pushed off, they can make those findings in the future. And again, you just start to pull on one piece of this and the whole thing begins to unravel. And back to your point about this distinction between 2006 and 97, I don't think it matters. If there's one 2006 area or one 1997 area, it shows that there are continuing legal consequences from this rulemaking and therefore the challenge to the rulemaking is not moot. There's not, you wouldn't sever and say the challenge is moot with respect to 97 and not moot with respect to 2006 because it's the same rulemaking, it's the same change to the statute. I'm not sure, I don't, I take your point that you wouldn't sever within 97  but the rule has certain timelines for 97 and certain timelines for 06. It resets all the deadlines to December 14th, 2000, or December 31st, 2014. It does but it's doing that for two sets of timelines. I mean, they coincide, December 14th, 2000. Yeah. December 31st, 2014 and then December 31st, 2015 but. Right but, all right, we don't need to belabor it. Okay, I see that I'm out of time so I'll reserve the rest of time. Well, I wanted to ask a question on the merits and that is you say very frequently in the brief that you are not making any request for backdating to use your term but you are asking for changes which would make it the case that various deadlines either have passed but under the rule have not passed or will pass sooner than they will pass under the rule. So it sounds like a distinction without a difference. No, and this is, I think, very important. So the deadlines, the liability, the duty flows from the statute. It's not triggered by some future agency action. It doesn't depend on EPA adopting any rule. That duty is already there. The findings of failure to submit that EPA will need to make if this classification rule is vacated do not create new duties. They are a determination that those pre-existing duties have been breached and then in making that finding, the rule sets out an 18-month deadline to resolve that failure with the possibility of sanctions. To follow it up, you are proposing that the court in effect require that EPA set a different set of deadlines. In fact, that's what this whole argument about movements  than under the rule. And I'm just not sure. It sounds to me like a verbal quibble to say that that's not backdating. No, we are not asking the court to set any deadlines at all. All of those deadlines are already spelled out in subpart 4. What EPA has done in this rulemaking is to change all those statutory deadlines. And in effect, if you want to think about, what's retroactive here, this rulemaking is an attempt to retroactively absolve the states from the fact that they missed all of these deadlines. But I mean, that's a helpful characterization for your purposes. But what happened in the real world is that everybody was operating on the assumption that it was subpart 1. And then it was our decision that triggered the need to take a look at that point and say, wait a minute, we've all been operating on the assumption that subpart 1 governs. Now it turns out subpart 4 governs. There's a bunch of deadlines that nobody was aware of. And we've got to figure out some way to deal with that in the aftermath of the D.C. Circus decision in NRDC. Right, well, the one nit I would pick there is that that decision was not, now subpart 4 applies. That decision was a decision that subpart 4 has always applied. Sure, I know. I take that point about the way courts do statutory interpretation. But I'm just saying that the real world universe was that people were operating on the assumption that subpart 1 had always been the operative rule. And it turns out subpart 4 had always been the operative rule. That's right. Nobody knew that until the time of the NRDC decision. That's right. And it just so happens that a lot of the time frames by that point had already elapsed. Yeah, but so the Clean Air Act provides all of the tools, lays out exactly how this works, when these deadlines have been missed. So it gives the authority under, you know, I have a question about the deadlines. I assume that Congress sets up the deadlines in order that a sensible planning process can go forward between the EPA and the states or areas within the state, I guess it turns out, can work out tips that are sensible and that make it possible for the compliance to take effect in a reasonably orderly way. If you make it sound as if the only issue before us is fault, and you say that given the NRDC decision, the EPA was at fault and the states were at fault. But the consequence of what you're asking is that certain decisions that Congress contemplated taking place on a schedule will not take place on that schedule, but on a sharply compressed schedule. Isn't that a fair characterization? No, it's not. And I think this is an important point too. Under the statute, for example, areas were given 18 months to prepare their moderate area plans. Upon a finding of failure to meet that moderate attainment deadline, they're given 18 months to prepare their plans. What needs to happen now when EPA makes these various findings of failure to submit, those states will get 18 months to prepare their plans. 18 months is plenty of time. But one point there is that the statute didn't just give jurisdiction 18 months because if they ask for and get voluntary reclassification, they get four years. Exactly. But the way you're looking at it, that's no longer available. They never have that opportunity. That's true. And if we're trying to effectuate exactly the scheme that Congress wanted to put in place, an integral part of that scheme was the jurisdictions, because we care about proactive action, would have had four years if they asked for voluntary reclassification and they get it. Apparently Congress wanted to encourage that. They've provided for that possibility. But then the regime that you're suggesting be implemented would eliminate that opportunity. It's true that that opportunity is eliminated, but there are two sides of what Congress envisioned here, okay? And overarching beyond all these planning deadlines was this goal of cleaning up the air within 10 years. And so we are now at that 10, coming up on that 10-year mark for the 97 standards adopted nearly 20 years ago. And so to elevate this goal of giving states options for four years to adopt plans, to elevate that over the Congress's clear and frankly overriding goal of cleaning up the air is not a sensible balance.  The deadlines are in the statute. EPA can't reset those deadlines. That's the law, right? Subpart four has always applied. There's no authority to reset them. Congress has decided 18 months is a fair amount of time to provide these states that have missed the deadline and struck that balance of pushing those states along and making sure that the air is ultimately cleaned. I think you could look at it that way, but you could also say that Congress struck the balance to give jurisdictions four years if these circumstances present themselves and no jurisdiction would have that opportunity under the way you're looking at the statute. But I don't think there's a legal construction that gets you there. A legal construction of what? Of the statute. If there are provisions that say you do have, nobody can deny, and I don't think the EPA would deny, that you have dates that are fixed in law that you rely on. And no authority to change those dates. Well, sure, those particular dates. Those dates are built upon a certain set of assumptions that are in the statute. And one of the assumptions that are in the statute that's in the statute is that there could be the possibility of not having 18 months, but four years, because we care about jurisdictions  and having a proactive resolution. I think you need to revisit why those areas are given four years. So those areas are given four years in expectation that there's an early acknowledgement that they have a serious problem. And because when they voluntarily reclassify, they're voluntarily agreeing to adopt more aggressive controls. And Congress said that's a good thing because that will clean the air and lead us to our overriding goal of cleaning the air. That four-year flexibility does not serve congressional purposes at this point. Right? That four-year flexibility just allows for delay. It allows for the air to stay dirty. If the type off between the advantages from voluntary action by the states  kicking and screaming to do some sort of compliance, Congress has specified that trade-off. I'm not sure how that trade-off is different just because it's moved out in time. Because at this point, again, petitioners, their members have been suffering the unfairness of all this delay. And so I don't think there's a reasonable argument, frankly, and I don't think EPA has made this argument, that Congress would have intended at this point, at this late stage, to continue to draw out this schedule when... But do you think, is your argument that Congress actually, in the statute, foresaw the possibility that the entire regime would suppose it was under Subpart 1, but then lo and behold, it's actually under Subpart 4, and even if it's under Subpart 4, we still want the Subpart 4 deadlines to apply, we being Congress, even though that decision that it's Subpart 4 was made after some of those deadlines have already gone? Yeah, no, I think Congress anticipated that the deadlines in Subpart 4 would be met. If you thought that Subpart 4 applied. They definitely should be met if Subpart 4 was the regime that applied. And it did apply. It turns out it did. Right. But I guess I don't understand your argument to be... But again, so the suggestion is that EPA can benefit from its illegal action. That it can act illegally, adopt rules that conflict with the statute, and thereby extend things out, however it sees fit. And I don't think that's the rule of law that governs these cases. Subpart 4 has always applied. Congress was clear about the requirements of Subpart 4. EPA doesn't have authority to change those. And we're leaving out the states who... The states were operating... And we're leaving out the breathing public. No, no, I don't mean to leave them out at all. Of course, you're right that the ultimate goal of the statute is to benefit the public. There's no doubt about that. But we're in a regime now where we... The deadlines that everybody would have assumed would apply had everybody known at the outset that Subpart 4 set forth the governing framework. That's gone. We can't reconstruct that universe. So we're talking about what do we think is a sensible universe to construct now in light of everything that Congress has told us about how to balance these considerations? And again, I would just re-emphasize, we are talking about giving states 18 months to prepare those plans. That's the same amount of time that Congress gave areas to adopt moderate area plans. It's the same amount of time they gave areas to adopt serious area plans following a failure to attain. 18 months is not an unreasonable demand on these states, especially in light of how far beyond schedule we are in cleaning up the air. Okay. Thank you. Good morning, Your Honor and Judge Williams. My name is Brian Link from the Department of Justice Environmental Defense Section. With me at council table is Karen Bianco of EPA. I'd like to start in the same manner you instructed Petitioner's counsel by addressing first the 1997 and 2006 areas and why we think there's no practical further relief to be gained from vacating- Let me ask you a question, sort of a general question that relates to that. The petitioners argue that if we were to find it mootness vacatur of the rule would be appropriate. And I don't honestly know if that's true, but let's assume that it is. Do you think that vacatur of the rule would have consequences? I don't think vacatur of the rule would meaningfully benefit the interests asserted here by the petitioners, given that, assuming, as I think I understand from their argument today in their briefs, that they are not seeking retroactive administrative findings. And I can explain more of the details about that. I do think, however, vacatur of the rule would have a detrimental impact on the states, which are now working to make their plan submissions in reliance on this rule. Obviously, states have made submissions to meet the December 31st, 2014 date. One consequence of vacating the rule would be that right now, with this rule in place, earlier Subpart 1 submission deadlines have been superseded. If this rule were to go off the books, the earlier 2007 and 2008 implementation rules would still be in place because they were never vacated. And so it would actually engender even more confusion at the state level about what deadlines now apply for further submissions. And if I may add one other point, there is actually a lawsuit pending right now in the Northern District of California to enforce findings of failure to submit based on that December 31st, 2014 date. So if this court were to then vacate this rule, it would also potentially affect the rights of the litigants in that litigation. So if I'm hearing you correctly, whatever the consequences in terms of clean air and efforts by the states and so forth, there is a consequence in terms of orderly proceeding. Is that correct? I believe that there is. And I think I can also demonstrate to you that on the other side of this, there is not a tangible consequence in terms of clean air. In other words, on that side of the equation, vacating the rule simply puts us in the same status quo we have now. And I'll have to explain the details of that, but I think I can make that point. I do also want to address one other- Can I just understand one thing? You're not taking the position, I take it, that if the rule would be vacated, then we're back to the regime where the 2007 and 2008 rules exist, and then we're stuck with that regime. Because that's no good either. Everyone is on notice now that subpart four applies to PM 2.5 implementation. That would not change. Nonetheless, it would certainly disrupt the planning and the understanding of states as to how they should make further submissions going from this point if the court were to suddenly take away- Which happens anytime you vacate a rule. Absolutely. I take it that the existing set of rules have engendered certain assumptions, just like the 2007-2008 rules engendered certain assumptions. That is undoubtedly true. Now, and before showing why there's not a tangible redress to be had here in terms of clean air, I'd like to also address the premise of Your Honor's question, Judge Williams, which was that mootness requires vacateur. And I would refer you to the case of Chamber of Commerce versus EPA, 642 F. 3rd at 211. In that case, this court discussed the fact that the Munsingware and Meckling line of case law that petitioners are relying on does not automatically apply to agency administrative rules. Because agency rules continue to have vitality even where the particular dispute presented concerning that rule has become moot. And here, as I said, vacating the rule would disrupt at minimum the planning efforts and understanding of the states that are working to bring their SIPs into compliance with Subpart 4. So while vacating the rule, I believe would not meaningfully benefit the petitioners, it would be to the detriment of the public interest and is therefore inappropriate as an equitable remedy. So can we talk then about whether the relief requested by Wild Earth would have practical consequences given where we are now? Certainly. And if we start with, let's start with 2006. Okay. And if we start with 2006, there's at least South Coast, I think, that has sought voluntary reclassification. And I thought San Joaquin Valley was in the same boat. So they both have the possibility of voluntary reclassification pending. Is it true then that if that voluntary reclassification is granted, then we're talking about a difference between 18 months to submit a plan versus four years to submit a plan? EPA views it's the ability of the timing of when it can reclassify under 7513B1, and that's the discretionary reclassification procedure you're talking about that allows four years. EPA does not agree that it can only use that procedure for the first 18 months following a submission. And when I say that, this has been EPA's view for over 20 years. 57 Federal Register at 13537 is an excerpt from the general preamble, the first time EPA discussed in a preamble implementation of the Clean Air Act amendments. And it stated its view then that although 7513B1 subparagraphs A and B refer to 18 months time periods, that those aren't an absolute restriction on when EPA can reclassify this provision. EPA's position is that it can do it at any time prior to the deadline for determining attainment if it determines that such area will not timely attain. Okay, but the deadline for attainment is coming up in a few weeks, right? Sure, and so if EPA at any point chooses to reclassify under this provision, petitioners may disagree with that premise of law, and they can challenge the decision to reclassify and claim and argue that it's unlawful, and a court will decide that. Now, maybe I'm not understanding, and correct me where my mistaken assumption is.  Yes, of this year. And the deadline to then determine whether the area is attained is June of next year, six months following the attainment deadline. So EPA has until June 30th, 2016 to make the determination of whether it's attained or not. But in terms of approving voluntary reclassification, there's voluntary reclassification motions, petitions, whatever you call them, pending now, at least with respect to one jurisdiction and maybe another. That's correct. And if that's, then I take it you would act on that. Absolutely. You would act on it by December 31st. Well, I guess my point was that EPA's view is that it technically has the discretion under the statute to act on those as long as it does so prior to the point where it has a deadline to determine attainment. And that view is not going to change whether the rule is vacated or not. Again, that view has been stated in the Federal Register for 24 years. OK, so vacating the rule in this instance does nothing to change the status quo. It remains the same. But here's my question. So even the way you're describing it, you would resolve the voluntary reclassification by December 31st because that's the attainment deadline. So even under your view, you would resolve it by then? My understanding is the EPA believes it would have the discretion at any point prior to June 30th when it has a deadline to determine attainment. OK, so let's take it. Then you can still reclassify under the discretionary provision prior to that time. OK, so let's extend it to June 30th. I don't know about that, but let's just extend it to June 30th. As I understand it, the practical consequence of granting voluntary reclassification by June 30th is that at that point, there would be four years to submit a plan, whereas in an alternate universe where voluntary reclassification is unavailable, which is the universe that Wild Earth is arguing for, there would only be 18 months. That's true. But my point about that, though, is whether the court vacates the rule or not, EPA still has an independent decision to make in any particular area about whether to reclassify. And so even without this rule in place, it could still, under its previously adopted position and view, make the decision to reclassify under the discretionary provision, and that would set in place the four-year period. Now, that decision is then subject to challenge in a separate action, but it's not an issue that's right here now. And that's why vacating this rule does nothing to affect, in a practical matter, the status quo with respect to any of those areas. But why wouldn't we look at what the possible and probably likely consequences are? I mean, you're right that something else has to happen. Right. But we have to look to see whether that something else is going to happen. Well, I guess my point is that it's basically still the same forward-looking scenario with or without the rule in place for an area. Let's take a more specific example. And it might even be easier to talk about 1997 because we went through the colloquy of the San Joaquin Valley. It has submitted a serious, it has already been reclassified, submitted a serious area plan. And when you ask counsel, what possible further issue could there be for us to consider? He said, well, what if the plan is unapprovable? Well, the statute deals with that. Again, and nothing in the rule impedes the statute. First, there is, if the plan, if EPA were to decide that they agree, the plan can't be approved and they disapproved it, under 7509A, that will start a two-year clock, an 18-month clock on sanctions and a two-year clock on the promulgation of a federal implementation plan or FIT. Those mechanisms will spring into place. The rule does not prevent them from doing so. If EPA were to approve it, well, sorry. What about possibly withdrawal that was mentioned, which as an additional possibility that it could be an ongoing negotiation with respect to withdrawal? Does that change things in your view? If, well, if EPA takes, EPA has a deadline as well to act on the plan once it's been submitted, 18 months under 7410K2. And again, nothing in this rule purports to change how 7410K2 works. So if EPA takes too long, a citizen suit could be filed to enforce that deadline. Nothing in the rule changes that. As I've noted, there's already a deadline suit filed in the Northern District of California to enforce the timing of failure to submit decisions in response to the December 31st, 2014 deadline. That will proceed as these matters are supposed to. Nothing in the rule changes how that works. If I can consider another 1997 area, South, well, again, the Libby area, which has a final clean data determination in place. And what council said was, well, what if they slip out of attainment in the future? Well, the clean data determination, it's not the same as reclassification. Redesignation, that was one of your questions. What it does is it suspends all moderate area planning requirements. And the way that that policy works has been upheld by the court in the NRDC versus EPA case 571F3 at 1259 to 1261. So I understand council may not agree with that policy. This court has already considered his objections to it and has upheld it. So can you help me then on, so that's 97, but on 2006, I guess I'm still stuck on not understanding why there's no practical consequence vis-a-vis a jurisdiction that's asking for voluntary reclassification. Because as I understand it, and you just tell me where I'm wrong, as I understand it, when you ask for voluntary reclassification, if you get it, if it's granted, you have four years to submit a plan. If not, in an alternate universe, you only have 18 months. That's a practical difference. This is what I think I understand to be the reason petitioners would say relief's meaningful and why I disagree. What they believe, if I understand them brief right, is that EPA only had an 18-month window in which to decide to reclassify an area under 7513B1. And that 18-month window opened way back before this court even announced the NRDC decision. EPA disagrees that there is an 18-month window. EPA believes it has the ability, the discretion to reclassify an area under that provision up until the point where it meets its final deadline to determine attainment. And as I say, EPA didn't create that position in this rule. It's always held that view. And so vacating the rule wouldn't change the fact that that is still EPA's position about what its discretion is of the timing of discretionary reclassification. So their premise is wrong. They believe that the only reason EPA can still have the option to reclassify an area by discretion is because of the fact that it created this December 31st deadline. But that's not true, at least not under EPA's view of the act. The act already gives EPA the discretion to do it at any point up until its final deadline to determine attainment has run. And that, I see. And so your argument is under the rule, the attainment deadline never changed. Exactly. So it is so... So the rule has no impact on this question whatsoever. Now they disagree with EPA's view, but the rule doesn't affect that point of law, that dispute of law between the parties. It didn't create that dispute. It's not right for decision here. Vacating the rule also is not going to change it. EPA would still, in its view, have the discretion to look at an area at a point prior to June 30th of next year and say, okay, we don't think this area is going to attain. We're going to reclassify it under 7513B1. And when they do it, I understand a claimant that agrees with a petitioner's counsel would challenge that as unlawful. And then a court could decide that at the appropriate time. But it's not a question right here, and vacating the rule is not going to affect it either way. And when you say it's not a question right here, I take it their argument is that that's just wrong. The reason I say it's not right here is because that was not part of the scope of this rulemaking was determining when EPA can or cannot reclassify by discretion. That's a position that's already stated to the public before. Stated to the public as long ago as 1992. If I understand what you're saying correctly, that a victory for the petitioners here would change the context fairly radically for that litigation. That is to say for litigation over the EPA's interpretation of 7513B1. I don't think it should, if I am understanding correctly, that they are not seeking to have EPA make retroactive findings. Because one of the things I wanted to address earlier in the comments during this argument was the idea that there are things that have happened by operation of law already. And I just want to make sure I read to the court the text of, I think, the most important provision. And this is the reclassification by operation of law under 7513B2. It says, if the administrator finds that any moderate area is not an attainment after the applicable date, the area shall be reclassified by operation of law. A predicate finding by EPA is necessary. And so they're wrong when they say that it's already happened and that therefore it doesn't matter that there was this long period of time when everyone was operating under the assumption that subpart one applied and then the court announced differently in the NRDC decision. It absolutely matters because this mechanism, this operation of law mechanism doesn't become triggered until EPA takes affirmative administrative action. But the petitioners have said here that they are not seeking somehow to have that be the outcome of this case today, that EPA go back and do that. If they're not seeking, therefore, retroactive backdated administrative findings, then there's really no difference between just leaving the rule in place for them and vacating it. There's no tangible additional benefit. All they would be doing is creating the same status quo. No, no, but I think their argument is that once we hand down a decision that's in their favor, it's true that you have to take that step. But you have no choice but to take that step. Well, the court didn't agree with that in Sierra Club 1 or Sierra Club 2, cases we cited in our brief. And those were cases where the court agreed that EPA, in a deadline lawsuit, should not be compelled to issue a backdated non-attainment finding for an area where the time had elapsed. But aren't we going to the merits then if we're talking about Sierra Club? I mean, I thought we were talking about jurisdiction. Well, I guess my only point there is that they can't possibly... It doesn't seem from their argument that they're asking the EPA to backdate findings. If they were, they would be wrong, I believe, on the merits under Sierra Club 1 and 2 and this court's recent analysis in Treasure States. I don't think they're asking to backdate because what they're saying is once the decision comes down, then you have to, you don't have a choice, but to take the action to reclassify as serious. And that has tangible consequences. But if they're not asking to backdate, then there's no difference between simply the agency doing what it's already... Making the decisions that already do now. I mean, again, December 31st, 2014, was more than six months ago. The six months is run. If there's an area that failed to submit a plan, EPA is due to make a finding, a failure to submit. That's already true, even with the rule in place. So what difference would it make to vacate the rule in that instance? It's still the same status quo. The difference would be whether you have four years or 18 months. And on that point, my point is that they are wrong in suggesting that the only thing that makes the discretionary mechanism available to EPA is the idea that they have 18 months from December 31st of last year. EPA believes its view, as stated to the public, even prior to this rulemaking, is that it can use that mechanism at any point prior to the final deadline for determining attainment. So if this rule didn't exist, EPA would still believe that because the subpart one attainment date doesn't run until this December 31st, and the six months for EPA to determine attainment under 7513B2 doesn't run until next June 30th, that EPA still has, right now, another roughly seven months in which it could use B1 if it shows. That is its position. And that was the position before this rule was issued. It's been the position for 20 years. And that's been EPA's practice. It has, in fact, at various points, reclassified areas outside of that 18-month window as long as it did it before the final deadline under B2 for determining attainment. And take it one step further. So they have until, so we're at June 29th. Right. And at June 29th of 2016, EPA has to make a determination by the next day of whether to voluntarily reclassify. Am I understanding that right? That would be the latest, that it believes it has discretion under the statute. Yeah. So then on that date, it has to make a decision, yes or no, on voluntary reclassification, right? That would, yes, that would, yes. And if it says yes, then the jurisdiction that gets the benefit of voluntary reclassification has four years to submit a plan. Right. But that view is not, again, was not created by this rulemaking. It already had been EPA's position. It's been the position for years. What I cited to you, stating that position for the first time, was a general preamble written 23 years ago. And that position hasn't changed. But why, but I, forgive my density, but I'm still not understanding why there's not a practical consequence. Because at that point, even if that's been your interpretation forever, if at that point there's a difference between four years and 18 months. Let me be clear. Yes, there's a practical consequence about whether EPA invokes B1 or B2. Yes. My point, though, is that vacating this rule is not going to address that consequence either way. Because vacating this rule doesn't change the premise on which EPA is relying and interpreting the statute. What would change it is if EPA makes that decision and then someone challenges it in court, challenges the merits of that reclassification, maybe they prevail, maybe they don't. A court may agree or not with EPA's view. But that's the point where that consequence would be addressed. And that is where there would be a tangible benefit to pursuing the merits of such litigation. If Your Honor have nothing further, I will just conclude. For all the reasons we stated in our briefs and in argument, we believe the rule should be dismissed for lack of standing or as moot without vacating it. Or alternatively, the court should uphold the rule on the merits. Thank you. We'll give you 30 minutes. I just want to touch on this one point about EPA's claim that they can reclassify at any time. And I would just, I was trying to look quickly through the recent South Coast proposal and I didn't have a chance to look at the San Joaquin proposal either. But I don't think either of those proposals predicate that voluntary reclassification on this general authority or this old interpretation that they're referring to. They predicate it on the fact that the classification rule reset the moderate area plan deadlines and that this request was within the 18 months of that new moderate area plan deadline. Now, what if, so we'll look at those materials and decide what they in fact relied on. But if you accept the argument that the authority to do that until the attainment deadline has always been... That interpretation has always been there. Then there's still this practical difference that should petitioners disagree with vacature, they're in the posture of saying the statute says you can make these determinations within 18 months. This is beyond 18 months. What's your legal argument? Versus with the classification rule, they can say, it says we can make this determination within 18 months. We're within 18 months. One is a fairly straightforward statutory argument that they are making, that they have made in these proposals that the statute says 18 months from the moderate area plan due date, the moderate area plan due date has been reset. Therefore, we're within that timeframe, we can voluntarily reclassify. Under this broader claim of authority, they can't make that straightforward statutory argument. They have to say, notwithstanding the fact the statute gives us 18 months to make this reclassification, we think we have broader authority to do it for six years. And maybe that fight is still to come. That's their point though, that that fight would be another one. But that is a different fight. That is a different legal fight, right, with or without the classification rule. With the classification. So the practical difference then at that point, we're not talking about deadlines for submissions and things like that. What we're talking about is the nature of the legal arguments that would be made. Well, I mean, what's become apparent is that we can't get any deadline complied with without litigation. So the whole context of this thing is what is that next piece of litigation? What is the deadline that we are going to have to try to enforce? And so unfortunately, I think everything is wrapped up in the context of, you know, what does the statute say? What are the statutory arguments? What are the deadlines? And, you know, what are the legal positions that petitioners will be forced to take? Thank you. Thank you. Case is submitted.
judges: Srinivasan, Williams, Ginsburg